*Avery*, for the plaintiffs.

*Elam*, for the appellants.

---

SARAH ANN PENNY *v.* SARAH WESTON and others.

Where a married man removes to this state from one in which the common law, except so far as modified by statute, prevails, by which the personal property of the wife vests in the husband by the marriage, and where slaves are moveables by law, any slaves or other personal effects brought by him will be presumed to have belonged to him. It will be for the wife, or third persons, to destroy the presumption, by proof of title in themselves.

The Court of Probates having jurisdiction of actions for the partition of successions, must necessarily inquire what property composes the estate to be partitioned, and have power to decide upon questions of title incidental to the main question of partition, though without jurisdiction, under other circumstances, to decide such a question.

Cases in which the judge has recused himself, transferred in pursuance of the act of 27 February, 1841, ch. 32, from the Court of Probates, to be tried before the special judge provided by that act, sitting in the District Court, are to be tried in the same manner as if they had not been removed. The law, having made no provision for a trial by jury in the Court of Probates, none can be allowed in any such case by the special judge.

Where by the death of a minor child, its mother becomes seized of all the rights of the former to the succession of the father, no preliminary steps are required to be taken by the mother, in the nature of an *additio hæreditatis* to complete her right ; in order to commence an action against the other heirs for a partition of the succession.

An action of debt against an heir may be premature, before he has signified his intention to accept the succession, and in an action of partition, under such circumstances, the defendant might disclaim ; but the plaintiff is not bound, in the first instance, to institute any proceeding to compel him to assume the quality of heir.

Where in an action for the partition of a succession, in which a settlement of all claims among the heirs ought properly to be gone into, an act signed by the tutrix of the minor heirs, waiving her mortgage as tutrix on a tract of land, had been given in evidence, a promissory note executed as evidence of the debt secured by the mortgage, may be received to rebut the presumption of payment resulting from the release of the mortgage.

This case brought from the Court of Probates of East Feliciana, was tried before *Butler*, J., sitting under the act of 27 February, 1841, ch. 32, in the District Court of that parish, for the trial of certain cases in which the Judges of the District and Parish Courts had recused themselves or been recused; and the defendants are appellants from his judgment.

*Lobdell* and *Boyle*, for the plaintiff.

*A. N. Dunn*, and *Lyons*, for the appellants.

BULLARD, J. Malachi Weston senr. died in the Parish of East Feliciana leaving two sons, Malachi Weston jun. and Robert Weston and a widow in community. Robert married Sarah Ann Kirkland, and died leaving one child and his widow. The child afterwards died, and his mother became his sole heir. She institutes this action, claiming, in the right of her deceased child, a partition of the grandfather's estate, which she alleges has been in possession of the grandmother, and of Malachi Weston junr. ever since his death, and that its revenues and profits have been enjoyed by them exclusively. It is alleged that the grandfather had certain property consisting principally of slaves, which he brought with him from South Carolina, and which at his death vested, in equal moieties, in Malachi jun. and Robert, and that Robert's moiety is vested in the plaintiff, the mother and heir of his only child. It is also alleged that other property was acquired in Louisiana, of which the widow in community is entitled to one half; Malachi jun. to one fourth, and the plaintiff, in the same right to the other fourth.

Thus far, every thing appears simple and free from difficulty. But the matter is rendered complex and involved by the fact that Mrs. Weston had been twice married, previously to her marriage with Weston. First she married Croft, in the state of South Carolina, who died leaving two sons, the descendants of one of whom are parties in this case. Moses Croft, the other son, died in 1828: after the death of Croft, his widow married Edrington, and had one son, who came with her to Louisiana, and died here without

posterity. It is alleged that certain slaves came from a stock owned during the former marriages, and that they are not to be partaken as a part of the succession of Malachi Weston sen.,but are the property of the widow herself and of the heirs of her children by the former marriages.

The first question is therefore, one of title, that is to say, which of the slaves belonged to Malachi Weston sen. at his death, and which to the widow, or her descendants by former marriages.

It is shown that the common law prevails in South Carolina, except so far as modified by statute, and that the personal property of the wife vests in the husband by the marriage, and that slaves are moveables by the law of that state. When a married man removes from that state to this, and brings, with his family, slaves and other personal effects, it may be fairly presumed, they belong to him, until the contrary is shown. It is for his wife, or third persons, to destroy the presumption, by exhibiting evidence of title in themselves. The burden of proof is upon them.

The evidence shows that after the death of Croft, the first husband, his children got a part of the slaves, and the widow a part. Whatever became her's vested in her second husband Edrington. It is probable there was a partition, inasmuch, as the representatives of Croft never appear to have claimed those which Weston brought to this state, and which are inventoried as a part of his estate. The same reasoning applies to the son of Edrington, who died without setting up any pretensions to those slaves, which may have been acquired by his father on his marriage. Neither set of children appears to us to have established any title to the slaves claimed by them, and the judge did not err in his decision upon the question of title.

But it is contended that the Court of Probates was without jurisdiction, to determine the question of title between the parties to this controversy. We are of opinion, however, that the action brought by the plaintiff for a partition of the estate, in which her deceased child had an interest, was clearly within the jurisdiction of the Court of Probates. The question of title was incidental only. In every action of partition the first question is, what property composes the estate to be partitioned, and the court is without jurisdiction to decide upon such a question, except as inci-

dental to the main question of partition. That court might, therefore, well inquire, whether particular slaves, which had been inventoried as a part of the succession to be divided, were in fact the property of the succession.

The court did not err in refusing a trial by jury. Although the cause was tried by the Special Judge sitting in the District Court for the trial of such cases as could be tried neither by the Parish nor the District Judge, yet it was a case pending in the Court of Probates, and was to be tried precisely as if it had not been transferred for that purpose alone to the District Court, under the provisions of the statute. The law has made no provision for the trial by jury in Courts of Probates.

It is further contended, that the plaintiff has shown no right to institute the present action, because she could not represent the place, degree and right of her son Robert P. Weston, and that even if she could, she was bound first to institute an action to compel the minor heirs to decide whether they would accept or renounce the succession.

We are of opinion that, on the death of the child, the plaintiff, his mother, became seised of all his rights in and to the succession of the father which he in the same manner, became seised of on the death of his father. Whatever action the father of the minor child might have maintained in relation to his father's estate descended to and became vested in his mother. Nor is it required in cases like the present, that any preliminary steps should be taken, in the nature of an *additio hæreditatis*, in order to complete the right of the plaintiff. The defendants were not bound to assume the quality of heirs, and those who are minors necessarily accept only with the benefit of inventory. The action of debt against an heir might, perhaps, be premature, until such heir had signified his intention to accept the estate ; and in an action of partition the defendant might disclaim, but the plaintiff is not bound, in the first instance, to institute any proceeding to compel him to assume the quality of heir.

The defendants and appellants rely upon a bill of exceptions, from which it appears that, after an act signed by the plaintiff as tutrix, waiving her mortgage on a certain tract of land, had been given in evidence, the court permitted a promissory note, which appears to

have been given as evidence of the debt secured by the mortgage, to be read in evidence to rebut the presumption of payment, which might result from the release of the mortgage. It appears that a tract of land, held in common, among the widow and heirs of Malachi Weston senior, had been adjudicated to the widow, Sarah Weston. One fourth was coming to the minor then represented by the plaintiff as tutrix, and the mortgage released was that resulting in favor of the minor from the sale. The note was given by the widow for one fourth of the price of the adjudication. In our opinion the court did not err. If any thing was due to the minor for property disposed of, it was competent for him to show it in an action of partition, in which a settlement of all claims among the heirs ought properly to be gone into. The note given for the minor's share of the price of the land, which had been disposed of by the widow, was, therefore, properly admitted in evidence, to show that the price had not been paid, notwithstanding the release of the mortgage, which appears to have been granted to enable the widow to raise money by a mortgage of the land.

The appellees answer that there is no error to the prejudice of the appellant, but that if the court should think otherwise, and that the judgment ought to be opened, they say that the judge erred to their prejudice, in not allowing the full amount of the value of the use of the property, over and above the off-sets shown by the appellant, the judge compensating said balance against the care and trouble in raising the young negroes, the increase of the old stock. An attentive consideration of this part of the case, and of the principles which appear to have guided the court below, has led us to the conclusion that no error was committed to the prejudice of the appellees. The defendants are made to account for the use of the property which was in their possession. They were then credited with the amount of community debts paid, and with the use of other property which those, whom the plaintiff represent, enjoyed for some time, and a further allowance is, for the trouble and expense of rearing the young slaves of the common stock. This appears to us equitable. Not only had the taxes to be paid on the young slaves ; but it is well known that they are in reality an expense to the owner for food, clothing, and medical attention. It is just that the co-proprietor who has reared them, at

his own expense, should be compensated, and nothing shows that the allowance was unreasonable.

The judge who tried the cause appears to have investigated the rights of the parties thoroughly, and to have arrived at just conclusions; and no such error has been brought to our notice, as makes it our duty to reverse the judgment.

*Judgment affirmed.*