## ALEXANDER MARTIN et al. *v.* RICHARD BOLER.

Where a general allegation is made in a petition for letters of administration to the effect, that there is considerable property belonging to the estate—*Held:* that such an allegation cannot estop the party making it, further than it is shown to embrace certain specific property to which it was designed to apply.

An allegation of such a general character cannot bind the widow, the heir or the creditor, to an admission of title to whatever should afterwards be embraced in the inventory.

An administrator may show that he signed an inventory under an error of fact.

An administrator does not bind himself personally, and ought not to be concluded by allegations which he may deem it to the interest of the estate to make, in a suit brought by him in his capacity as administrator.

Where a husband and wife remove with slaves to this State, from a State where the common law prevails, it is the presumption of our law that the husband is the owner of the slaves.

APPEAL from the District Court of the Parish of Franklin, *Mayo*, J.
*C. H. Morrison* and *Harper & Grice*, for plaintiff. *Baker & Harris*, for defendant and appellant.

MERRICK, C. J. The plaintiffs sue as the heirs of *Margaret Hopper*, the deceased wife of *Richard Martin*, to recover certain slaves which they allege belonged to the deceased in virtue of a deed of gift executed in the State of Mississippi.

Plaintiffs fail to produce any title to the property in their ancestor, and rely entirely upon certain alleged judicial admissions of the defendant.

The defendant avers that he acquired the slaves in controversy by virtue of a Sheriff sale, under an execution issued against *Richard Martin* and *P. Tiffie*, administrator of *Callett Tiffie*, deceased. The testimony in the record, independent of the judicial admission, is sufficient to establish title to the slaves in *Richard Martin*, prior to his sale to *Callett Tiffie* and the judicial sale to the defendant on the 5th day of February, 1848. It does not appear that the slaves in controversy were ever in the possession of the defendant, prior to his purchase at the Sheriff's sale, and, consequently, could not have been in his hands, as administrator, prior to his purchase.

The judicial admissions relied upon are,

1st. An application for letters of administration of the estate of *Margaret Hopper*, and accepting the appointment and signing the inventory in which the negroes were described and appraised.

2d. A petition in his capacity of administrator and a sequestration bond in the case of *Richard Boler, administrator, v. Richard Martin et al.*

I. The recital in the petition for letters of administration relied on as a judicial

47

confession, is the following, viz : " Wherefore, inasmuch as there is considerable property consisting of negroes and stock belonging to said estate, also debts due by her as partner in community with her said husband, your petitioner prays," etc. It is evident that a general allegation of this kind cannot estop the party making it, further than it is clearly shown to embrace certain specific property to which it was designed to apply. Petitions for letters of administration are usually in a similar form to this ; yet this, we believe, is the first time that it has been contended that a general allegation bound the widow, the heir or the creditor to an admission of title to whatever should afterwards be embraced in the inventory.

But it also appears that the defendant signed the inventory in which the negroes in controversy were appraised as the property of the intestate, in his capacity of administrator.

We infer from the testimony that the property did not go into the possession of the defendant as administrator, for we find him a few days after the inventory was made instituting suit, in his capacity of administrator, to recover the same from *Richard Martin.*

The administrator's bond was for only $500, whilst the property was appraised at $1000, and one of the witnesses swears that *Richard Martin* continued in possession of the property until he sold to *Callet Tiffie.* The question is, therefore, not embarrassed by the fact of possession in an administrator, when called upon to account for effects coming into his possession as such, but is a mere question of ownership and title. We can, therefore, see no reason of policy, nor do we find any provision of law which prevent the defendant from showing that he signed the inventory under an error of fact. *Non fatetur qui errat nisi jus ignoravit.* Dig. lib. 42, t. 2, s. 2 ; C. C. 2270 ; 6 An. 398.

II. On the second ground we find that the inventory was made on the 2d day of November, 1846, and on the 18th day of December following, the defendant, in his capacity of administrator of the *Succession of Margaret Martin,* filed a petition in the 11th District Court for the parish of Franklin, against *Richard Martin* and *Callett Tiffie,* wherein he explicitly alleged that said negroes were the property of the deceased and belonged to her succession, or at least to the community, and he prayed for a writ of sequestration and judgment against the defendants. He also annexed an affidavit to his petition, in which he stated the negroes would be removed out of the jurisdiction of the court. The *affidavit* was silent on the question of title. The suit was dismissed on motion of plaintiff's counsel on the 10th of March, 1848.

It appears to us that the allegations in this suit cannot bind the administrator personally. They must be viewed as made on behalf of the estate, and, we think, an administrator or person holding a trust ought not to be concluded by the allegations which he deems it the interest of the estate should be made. He ought not to be compelled to weigh his words in order to ascertain whether they might not some day be used against him individually, but should rather be considered as the organ of the succession and using the language on behalf of the same. And this we understand to be the doctrine of the civil law.

Souvent aussi, le mot *personne* n'indique que la qualité en vertu de laquelle quelqu'un à certains droits et est soumis à certaines obligations. Il arrive donc fréquemment qu'un seul homme réunisse dans sa personne plusieurs de ces qualités (*ut unus homo plures sustineat personas*), et que par là ses droits et devoirs diffèrent les uns des autres. Il faut donc, dans ce cas, examiner d'abord en quelle qualité il a agi ; et ce qu'il fait en telle qualité, ne peut lui préjudicier en telle

autre. Il ne peut, d'un autre côté, transférer les priviléges qui lui appartiennent en telle qualité, à des droits qu'il a en telle autre qualité. Mackeldey, partie générale, sec. II, No. 122.

We, therefore, conclude, that the judicial confession made by the defendant, in his capacity of administrator, was not conclusive upon him. He appears to have been a creditor seeking to recover his debt. At the time he applied for letters of administration, it cannot be presumed that he was accurately informed of the source of the title to the property.

He had the right at his own peril to dismiss his petitory action against *Martin* and *Tiffie*. The proof now shows that he was justified in doing so.

*Richard Martin* held the mother of the negroes in controversy, as owner in the State of Mississippi, two or three years prior to his removal to Louisiana in 1838, and after his removal he claimed to be the owner, and held the slaves as such, until he sold them to *Tiffie*. It appears that he acquired said negroes from one *David Thompson*, between 1834 and 1837. Removing with the slaves from a State where the common law then prevailed, it is the presumption of our law, that the husband was the owner. *Penny* v. *Weston*, 4 Rob. 165.

It being shown that the slaves belonged to *Richard Martin*, nothing prevented the defendant from purchasing the same at the Sheriff's sale. He was not a trustee for *Martin*, and violated no trust in purchasing property under the sale made on his judgment. Praintiffs assert title, and they must show themselves to be owners before they can complain of the acts of *Richard Martin*, their father, or the defendant, as possessor of property acquired through him.

This view of the case renders it unnecessary to examine the bills of exceptions and other questions presented by the record and the briefs.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment in favor of the defendant and against the demand of the plaintiffs, and that the plaintiffs pay the costs of both courts.